**Daniel Berke** (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BILLY FIELDS**, | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **DP BRONX, LLC, BRONXWOOD PARKING CORP.**, | **CASE NO.: 24-cv-5500** |
| Defendants. | **JURY DEMANDED** |

### CIVIL COMPLAINT

BILLY FIELDS (the "Plaintiff"), as and for his complaint against DP BRONX, LLC and BRONXWOOD PARKING CORP. (the "Defendants"), respectfully brings before the Court the below allegations.

### STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

1

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

7. Venue is also proper in this district because Defendants' property, the public accommodation, which is the subject of this action, is both located in, and does business within, this judicial district.

**PARTIES**

8. Plaintiff is, and at all times material to this litigation has been, a resident of New York County, New York.

9. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. Plaintiff's complaint stems from the discrimination he has experienced at the fast-food restaurant Domino's, in the parking lot of which he had difficulties maneuvering his motorized mobility scooter on the steep slopes of the accessible parking spaces and access aisle.

11. In July 2024, Plaintiff was not able to enter and dine at Domino's because there were architectural barriers to entry for individuals who use wheelchairs.

12. All references to Domino's in this complaint are made regarding the fast-food restaurant Domino's, and the building in which it is located, 2721 Bronxwood Avenue, Bronx, NY 10469.

13. All references to the parking lot (the "Parking Lot") in this complaint are made regarding the parking lot adjacent to Domino's, 2721 Bronxwood Avenue, Bronx, NY 10469.

14. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that BRONXWOOD PARKING CORP. is the owner of the real

property identified on the NYC Tax Map of the Bronx County as Block 4514, Lots 44 and 47 (the "Commercial Lots"), located at 2721 Bronxwood Avenue, Bronx, NY 10469.

15. Both Domino's and the Parking Lot are located on the Commercial Lots, 2721 Bronxwood Avenue, Bronx, NY 10469, a real property identified on the NYC Tax Map of the Bronx County as Block 4514, Lots 44 and 47.

16. Defendant DP BRONX, LLC leases the commercial space in which Domino's is located, from the owner of the building, Defendant BRONXWOOD PARKING CORP.

17. Defendant DP BRONX, LLC has control over Domino's.

18. Defendant DP BRONX, LLC manages Domino's.

19. Defendant DP BRONX, LLC maintains Domino's.

20. Defendant DP BRONX, LLC designed Domino's.

21. Defendant DP BRONX, LLC built Domino's.

22. Defendant DP BRONX, LLC constructed Domino's.

23. Defendant DP BRONX, LLC erected Domino's.

24. Defendant DP BRONX, LLC altered Domino's.

25. Defendant DP BRONX, LLC operates Domino's.

26. Defendant DP BRONX, LLC at all relevant times operated Domino's.

27. Defendant DP BRONX, LLC has control over the Parking Lot.

28. Defendant DP BRONX, LLC manages the Parking Lot.

29. Defendant DP BRONX, LLC maintains the Parking Lot.

30. Defendant DP BRONX, LLC designed the Parking Lot.

31. Defendant DP BRONX, LLC built the Parking Lot.

32. Defendant DP BRONX, LLC constructed the Parking Lot.

33. Defendant DP BRONX, LLC erected the Parking Lot.

34. Defendant DP BRONX, LLC altered the Parking Lot.

35. Defendant DP BRONX, LLC operates the Parking Lot.

36. Defendant DP BRONX, LLC at all relevant times operated the Parking Lot.

37. Defendant BRONXWOOD PARKING CORP. owns the Commercial Lots.

38. Defendant BRONXWOOD PARKING CORP. has control over the Parking Lot.

39. Defendant BRONXWOOD PARKING CORP. manages the Parking Lot.

40. Defendant BRONXWOOD PARKING CORP. maintains the Parking Lot.

41. Defendant BRONXWOOD PARKING CORP. designed the Parking Lot.

42. Defendant BRONXWOOD PARKING CORP. built the Parking Lot.

43. Defendant BRONXWOOD PARKING CORP. constructed the Parking Lot.

44. Defendant BRONXWOOD PARKING CORP. altered the Parking Lot.

45. Defendant BRONXWOOD PARKING CORP. operates the Parking Lot.

46. Defendant BRONXWOOD PARKING CORP. at all relevant times operated the Parking Lot.

47. Domino's is in a building erected on the Commercial Lots.

48. Domino's is in a building constructed on the Commercial Lots.

49. Domino's is in a building built on the Commercial Lots.

50. The Parking Lot is used by Domino's customers.

51. Domino's customers park their vehicles in the Parking Lot.

52. DP BRONX, LLC operates the fast-food restaurant Domino's in the building owned by Defendant BRONXWOOD PARKING CORP.

53. Defendant BRONXWOOD PARKING CORP. is a lessor and leases commercial space in its building to Defendant DP BRONX, LLC.

54. Defendant DP BRONX, LLC is a lessee and leases commercial space from Defendant BRONXWOOD PARKING CORP.

55. Domino's and the Parking Lot are the subjects of this lawsuit and are hereinafter referred to by both their name and as the "Subject Facility."

56. DP BRONX, LLC is an American for-profit limited liability company organized under the laws of New York State.

57. DP BRONX, LLC is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

58. NYS DOS maintains entity information for DP BRONX, LLC in its Corporation and Business Entity Database ("CBED").

59. NYS DOS CBED maintains a corporate record for DP BRONX, LLC.

60. NYS DOS CBED's corporate record for DP BRONX, LLC contains neither name nor address of its chief executive officer.

61. NYS DOS CBED's corporate record for DP BRONX, LLC does not list the address of its principal executive office.

62. NYS DOS CBED's corporate record for DP BRONX, LLC contains no information regarding its registered agent.

63. DP BRONX, LLC does not have a registered agent.

64. The name and address of DP BRONX, LLC's registered agent are not known to Plaintiff.

65. NYS DOS CBED's corporate record for DP BRONX, LLC does not state the entity's primary location name and address.

66. NYS DOS CBED record for DP BRONX, LLC states that "the Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery," when served on the Secretary of State as agent, is DP Bronx, LLC, 7220 Windsor Drive, Allentown, PA 18106.

67. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that the Commercial Lots, on which Domino's and the adjacent Parking Lot are located, are owned by BRONXWOOD PARKING CORP.

68. BRONXWOOD PARKING CORP. at all relevant times was, and currently is, the owner of the Commercial Lots in the Bronx County on which the Subject Facility is located.

69. BRONXWOOD PARKING CORP. is an American for-profit corporation organized under the laws of New York State.

70. BRONXWOOD PARKING CORP. is licensed to conduct business in the State of New York by the NYS DOS.

71. NYS DOS maintains entity information for BRONXWOOD PARKING CORP. in its CBED.

72. NYS DOS CBED maintains a corporate record for BRONXWOOD PARKING CORP.

73. The corporate record for BRONXWOOD PARKING CORP. states that its chief executive officer's name and address are Domenico Broccoli, 1070 Esplanade, Pelham Manor, NY 10803.

74. The corporate record for BRONXWOOD PARKING CORP. states that its principal executive office address is Bronxwood Parking Corp., 1070 Esplanade, Pelham Manor, NY 10803.

75. The corporate record for BRONXWOOD PARKING CORP. does not state its registered agent's name and address.

76. The corporate record for BRONXWOOD PARKING CORP. does not state the entity's primary location name and address.

77. BRONXWOOD PARKING CORP. does not have a registered agent.

78. The name and address of BRONXWOOD PARKING CORP.'s registered agent are not known to Plaintiff.

79. The corporate record for BRONXWOOD PARKING CORP. states that the post office address, to which the Secretary of State shall mail a copy of any process against the entity served upon the Secretary of State by personal delivery is the following: Bronxwood Parking Corp., 1070 Esplanade, Pelham Manor, NY 10803.

80. The Office of the City Register of the New York City Department of Finance maintains a deed record showing that BRONXWOOD PARKING CORP. is located at Bronxwood Parking Corp., c/o Domenico Broccoli, 817 Allerton Avenue, Bronx, NY 10469.

81. Under the lease between Defendants, DP BRONX, LLC is responsible for ensuring that the Parking Lot complies with the 1991 ADA Standards.

82. Under the lease between Defendants, DP BRONX, LLC is responsible for ensuring that the Parking Lot complies with the 2010 ADA Standards.

83. Under the lease between Defendants, DP BRONX, LLC is responsible for ensuring compliance of the Parking Lot with 28 C.F.R. §36.201.

84. Under the lease between Defendants, DP BRONX, LLC is responsible for ensuring compliance of the Parking Lot with the New York State Civil Rights laws.

85. Under the lease between Defendants, DP BRONX, LLC is responsible for ensuring compliance of the Parking Lot with the New York State Human Rights laws.

86. Under the lease between Defendants, DP BRONX, LLC is responsible for ensuring compliance of the Parking Lot with the New York City Human Rights laws.

87. Any contractual provisions stating otherwise notwithstanding, Defendant BRONXWOOD PARKING CORP., the landlord and owner of the property, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the ADA.

88. Any contractual provisions stating otherwise notwithstanding, Defendant BRONXWOOD PARKING CORP., the landlord and owner of the property, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the ADA.

89. Any contractual provisions stating otherwise notwithstanding, Defendant BRONXWOOD PARKING CORP., the landlord and owner of the property, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Civil Rights laws.

90. Any contractual provisions stating otherwise notwithstanding, BRONXWOOD PARKING CORP., the landlord and owner of the property, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York State Human Rights laws.

91. Any contractual provisions stating otherwise notwithstanding, Defendant BRONXWOOD PARKING CORP., the landlord and owner of the property, which houses the public accommodation, cannot escape liability for its tenant's failure to comply with the New York City Human Rights laws.

92. Defendants are jointly and severally liable for the design of the Parking Lot.

93. Defendants are jointly and severally liable for the construction of the Parking Lot.

94. Defendants are jointly and severally liable for the maintenance of the Parking Lot.

95. Defendants are jointly and severally liable for the management of the Parking Lot.

96. Defendants are jointly and severally liable for the control of the Parking Lot.

97. Defendants are jointly and severally liable for the alteration of the Parking Lot.

98. Defendants are jointly and severally liable for the operation of the Parking Lot.

99. After January 26, 1992, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to Domino's.

100.    After March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to Domino's.

101.    After January 26, 1992, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to the Parking Lot.

102.    After March 15, 2012, either one of Defendants, or both of them, jointly or severally, simultaneously, or at different times, and at all relevant times, managed, and/or

had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or made alterations to the Parking Lot.

103.    Domino's is a fast-food restaurant and is thus a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104 Place of public accommodation (2), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

## STATUTORY SCHEME

104.    On July 26, 1990, Republican President George H. W. Bush, who himself subsequently became disabled and had to rely on a wheelchair later in his life, signed the ADA into law, which extended essential civil rights to individuals with disabilities.

105.    That law had been championed by Senator Robert J. Dole, who himself had suffered from a significant disability, which resulted from the wounds he received while fighting in Italy during liberation of the world from the fascists' dictatorship during World War II.

106.    On that day, July 26, 1990, the United States of America enacted the ADA, establishing extremely important and incontrovertibly indispensable civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges, and access to places of public accommodation.

107.    Congress made the following findings:

        a.  Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

11

b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

c.  Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free

society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

108.     Furthermore, Congress also explicitly stated that the ADA had to:

a.  Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

109.     Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

110.    Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

111.    The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

112.    ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

113.    It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

114.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

115.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b).

116.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the New York State Civil Rights laws.

117.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the New York State Human Rights laws.

118.    The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the New York City Human Rights laws.

119.    The Subject Facility affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(B).

120.    The Subject Facility affects interstate commerce within the meaning of 28 C.F.R. §36.104 Place of public accommodation (2).

121.    Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201.

122.    Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the New York State Civil Rights laws.

123.    Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the New York State Human Rights laws.

124.    Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the New York City Human Rights laws.

125.    Discriminatory intent is not required to establish liability under the ADA.

126.    Discriminatory intent is not required to establish liability under the New York State Civil Rights Laws.

127.    Discriminatory intent is not required to establish liability under the New York State Human Rights laws.

128.    Discriminatory intent is not required to establish liability under the New York City Human Rights laws.

129.    One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.
>
> 28 C.F.R. §36.304

130.     Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability, 28 C.F.R. §36.304.

131.     Removal of the architectural barriers is readily achievable by Defendants.

132.     At all relevant times herein, Defendants failed to remove architectural barriers to entry for disabled individuals present in the Parking Lot of Domino's, even though it is readily achievable to remove such barriers.

133.     The New York City Department of Buildings ("DOB") maintains records regarding the construction and alterations of buildings located in the Bronx.

134.     On or about September 2004, Defendant BRONXWOOD PARKING CORP. filed an application with the NYC Department of Buildings requesting approval of construction work on the Parking Lot.

135.     Defendant BRONXWOOD PARKING CORP. made alterations to the Parking Lot in 2004. Consequently, it was required to make the Parking Lot readily accessible to disabled individuals to the maximum extent feasible.

136.     Defendant BRONXWOOD PARKING CORP. made alterations to the Parking Lot in 2005. Consequently, it was required to make the Parking Lot readily accessible to disabled individuals to the maximum extent feasible.

137.     Defendant BRONXWOOD PARKING CORP. made alterations to the Parking Lot in 2006. Consequently, it was required to make the Parking Lot readily accessible to disabled individuals to the maximum extent feasible.

138.    Defendant BRONXWOOD PARKING CORP. made alterations to the Parking Lot in 2007. Consequently, it was required to make the Parking Lot readily accessible to disabled individuals to the maximum extent feasible.

139.    Defendant BRONXWOOD PARKING CORP. made alterations to the Parking Lot in 2022. Consequently, it was required to make the Parking Lot readily accessible to disabled individuals to the maximum extent feasible.

140.    Defendant BRONXWOOD PARKING CORP. repaved the blacktop of the Parking Lot in 2022. Consequently, it was required to make the Parking Lot readily accessible to disabled individuals to the maximum extent feasible.

141.    In September 2016, Defendant BRONXWOOD PARKING CORP. filed an application with the NYC Department of Buildings requesting approval of construction work at Domino's.

142.    In September 2016, Defendant DP BRONX, LLC filed an application with the NYC Department of Buildings requesting approval of construction work at Domino's.

143.    In 2016, Defendants made alterations at Domino's, which affected the area serving primary function.

144.    In 2017, Defendants made alterations at Domino's, which affected the area serving a primary function.

145.    Defendants completed alterations at Domino's after the 1991 ADA Standards were in effect. Consequently, they were both required to make the path of travel from the Parking Lot to Domino's readily accessible to the maximum extent feasible for individuals with disabilities and to bring Domino's and the Parking Lot in compliance with the 1991 ADA Standards.

146.    Defendants were obligated to spend up to 20% of the costs of renovations to Domino's to make the path of travel from the Parking Lot to Domino's readily accessible to the maximum extent feasible for individuals with disabilities and to ensure its compliance with the 1991 ADA Standards.

147.    Defendants were obligated to spend up to 20% of the costs of the renovations to Domino's to make the path of travel from the Parking Lot to Domino's readily accessible to the maximum extent feasible for individuals with disabilities and to ensure its compliance with the 2010 ADA Standards.

148.

149.    "'[D]iscrimination' includes, with respect to a facility or part thereof that is altered by, on behalf [**12] of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, *a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs."

Roberts v. Royal Atl. Corp., 542 F3d 363, 368 [2d Cir 2008])

150.    "Where the entity is undertaking an alteration that affects or could affect usability of or *access to an area of the facility containing a primary function*, the entity shall also make the alterations in such a manner that, to *the maximum extent feasible,*

> *the path of travel* to the altered area and the bathrooms,
> telephones, and drinking fountains serving the altered area, are
> readily accessible to and usable by individuals with disabilities
> where such alterations to the path of travel or the bathrooms,
> telephones, and drinking fountains serving the altered area are
> *not disproportionate to the overall alterations* in terms of cost
> and scope (as determined under criteria established by the
> Attorney General). 42 U.S.C. § 12183(a)(2) (emphasis added)."
>
> Id.

151.    "We must therefore first determine whether a challenged facility (or part thereof) has been "altered" in "a manner that affects or could affect its usability." Id.

152.    ""If alterations have been made, a defendant "discriminates" if those altered areas – and paths of travel to altered areas that "contain a primary function" – are not made readily accessible to disabled individuals "to the maximum extent feasible."" Id.

153.    "Even in the absence of alterations, a defendant nonetheless "discriminates" if it fails to remove any existing barriers to accessibility where such removal "is readily achievable."" Id. § 12182(b)(2)(A)(iv). Roberts v. Royal Atl. Corp., 542 F3d 363, 369 [2d Cir 2008]

154.    Defendant DP BRONX LLC altered the Parking Lot after January 26, 1992, but failed to make it readily accessible to the maximum extent feasible for individuals with disabilities and did not ensure its compliance with the 1991 ADA Standards.

155.     Defendant DP BRONX LLC altered the Parking Lot after March 14, 2012, but failed to make it readily accessible to the maximum extent feasible for individuals with disabilities and did not ensure its compliance with the 1991 ADA Standards.

156.     Defendant BRONXWOOD PARKING CORP. altered the Parking Lot after January 26, 1992, but failed to make it readily accessible to the maximum extent feasible for individuals with disabilities and did not ensure its compliance with the 1991 ADA Standards.

157.     Defendant BRONXWOOD PARKING CORP. altered the Parking Lot after March 14, 2012, but failed to make it readily accessible to the maximum extent feasible for individuals with disabilities and did not ensure its compliance with the 1991 ADA Standards.

158.     In 2024 Defendants failed to remediate the ADA violations in the Parking Lot, even though they were readily achievable.

159.     In 2024 Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

160.     After March 14, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for disabled individuals.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

161.     Plaintiff has been diagnosed by a physician as having suffered an ischemia. He has suffered right-sided hemiparesis, which caused nerve damage, made it difficult for him to stand, balance his body weight, and walk.

162.    Plaintiff's physician prescribed him a motorized mobility scooter.

163.    Plaintiff has obtained the motorized mobility scooter and uses it every day for all activities requiring mobility.

164.    Routes connecting accessible spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

165.    Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.
>
> 28 C.F.R. §36.104 (italics in original).

166.    Domino's is in a one-story building.

167.    Approximately eight other businesses are in the same building.

168.    When one faces the building located at 2721 Bronxwood Avenue, Domino's is the first retail space on the left side of the building, closest to Boston Road, Bronx, NY.

169.    The Parking Lot is in front of the building.

170.    The Parking Lot comprises one row of 22 marked parking spaces.

171.    In the middle of the Parking Lot, there are two accessible parking spaces and one access aisle in between them.

172.      The left accessible space has a steep slope.

173.      The access aisle has a steep slope.

174.      The right accessible space has a steep slope.

175.      There is a sidewalk – a walking path approximately 50 feet long and three feet wide – between Domino's and the Parking Lot ("the Sidewalk").

176.      The Sidewalk is at least four inches above the Parking Lot.

177.      The Sidewalk has a four-inch-high curb.

178.      There are two protruding building walls in front of Domino's.

179.      One of the walls is on the left side of Domino's and the other on its right side.

180.      Both walls protrude onto the Sidewalk and delineate its beginning and ending.

181.      The left wall protruding from the building blocks access to the Sidewalk. Consequently, there is no way for anyone to enter it from the left side of Domino's.

182.      There is a waist-high metal railing protruding from the building wall on the left side of Domino's that extends above an approximately three-foot high wall on the left side of the Parking Lot from the point of view of a person facing Domino's from Bronxwood Avenue.

183.      There is a wall protruding from Domino's on the left side of the entrance and another wall protruding from its right side.

184.      The Sidewalk extends from the left wall to the right wall, for the entire width of Domino's.

185.      The building wall protruding onto the Sidewalk from Domino's on its right side separates it from the storefront retail space immediately to the right of Domino's.

186.      There is no way to enter Domino's without stepping onto the Sidewalk.

187.    There are three parking spaces directly in front of the Sidewalk.

188.    There is a wheel barrier in front of each of these three parking spaces.

189.    The openings between the wheel barriers in front of the parking spaces in front of the Sidewalk are not wide enough for any wheelchair to pass between them.

190.    The wheel barriers in front of the parking spaces in front of the Sidewalk are twelve inches apart from each other and do not provide enough clearance for a wheelchair user to ride between them to approach the Sidewalk.

191.    There is no ramp on the Sidewalk.

192.    There is no curb cut in the Sidewalk.

193.    There is no ramp leading onto the Sidewalk.

194.    There is no ramp on the Sidewalk, which would allow an individual using a wheelchair to access it from the Parking Lot.

195.    There is no way for a disabled person in a wheelchair to access the Sidewalk because of the curb in front of it.

196.    There is no ramp on the Sidewalk, which would allow an individual using a wheelchair to access it from Bronxwood Avenue.

197.    There is no ramp on the Sidewalk that would allow an individual using a wheelchair to access it from Boston Road.

198.    The Sidewalk is elevated four inches higher than the Parking Lot. Because there is no ramp, the Sidewalk is an architectural barrier that prevents an individual who uses a wheelchair from accessing Domino's.

199.    There is no way for a disabled person in a wheelchair to enter the Sidewalk from its left side, because there is a wall there.

200.    There is no way for a disabled person in a wheelchair to enter the Sidewalk from the right side, because there is a wall there.

201.    An individual using a wheelchair does not have access to Domino's from the Parking Lot.

202.    An individual using a wheelchair does not have access to Domino's from Bronxwood Avenue.

203.    An individual using a wheelchair does not have access to Domino's from Boston Road.

204.    Plaintiff has difficulty walking and must use his motorized mobility scooter to enter and exit an accessible van.

205.    Plaintiff lives on Manhattan's Upper West Side.

206.    Plaintiff lived on Manhattan's Upper West Side for approximately seven years.

207.    Plaintiff visits his friends in the Bronx.

208.    Plaintiff shops in the Bronx.

209.    Plaintiff visits parks and other attractions in the Bronx.

210.    Domino's is in the Allerton section of the Bronx.

211.    Allerton is a neighborhood in the Bronx.

212.    Plaintiff lives approximately 12 miles away from Domino's.

213.    Plaintiff lives about 25 minutes away from Domino's by an accessible van.

214.    Plaintiff uses his mobility scooter and travels, shops in stores and goes to restaurants in the Bronx, Manhattan and in other boroughs of New York City.

215.    Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in the Bronx's neighborhoods, including Allerton, East Bronx, West Bronx, Castle Hill,

Riverdale, the Valley, Parkchester, Longwood, Pelham Bay, and Williamsbridge among others.

216.    Plaintiff uses his mobility scooter, travels, shops in stores and goes to restaurants in neighborhoods throughout the five New York City boroughs.

217.    Plaintiff often visits these neighborhoods in an accessible van.

218.    Plaintiff often visits these neighborhoods by subway.

219.    Plaintiff takes trips to and visits the Bronx, where he meets with friends as part of a social program sponsored by Montefiore Hospital's Adaptive Sports Program.

220.    Plaintiff visits the Bronx approximately once per month.

221.    Plaintiff has been visiting the Bronx for over ten years.

222.    During his visits to the Bronx Plaintiff meets with friends who live in the Bronx.

223.    Plaintiff shops in the Bronx.

224.    Plaintiff dines in various neighborhoods throughout the Bronx.

225.    Plaintiff often visits the Bronx parks, including the New York Botanical Gardens, the Bronx Zoo, and Van Cortlandt Park.

226.    Plaintiff has been shopping in the Bronx in 2022.

227.    Plaintiff has been shopping in the Bronx in 2023.

228.    Plaintiff has been shopping in the Bronx in 2024.

229.    Plaintiff has been dining in the Bronx in 2022.

230.    Plaintiff has been dining in the Bronx in 2023.

231.    Plaintiff has been dining in the Bronx in 2024.

232.    In July 2024, Plaintiff arranged for a trip in an accessible van and travelled in it to Allerton, Bronx, NY.

233.     In July 2024, Plaintiff attempted to visit Domino's and was unable to access it because of the architectural barriers.

234.     In July 2024, Plaintiff was unable to access the Sidewalk because of the wheel barriers in the Parking Lot.

235.     In July 2024, Plaintiff was not able to access the Sidewalk because there was no ramp.

236.     In July 2024, Plaintiff was not able to access Domino's, because there was no accessible path of travel to it from the Parking Lot.

237.     Plaintiff had difficulties controlling his motorized scooter on a steep slope of the access aisle in the Parking Lot.

238.     Plaintiff had difficulties maneuvering his motorized scooter in the accessible space of the Parking Lot because its slope was impermissibly steep.

239.     Plaintiff had difficulties maneuvering his motorized scooter in the Parking Lot directly in front of Domino's because there was no accessible space or access aisle there.

240.     Plaintiff tried to enter Domino's to dine in it.

241.     Plaintiff maneuvered his wheelchair to the parking spaces in front of Domino's.

242.     Plaintiff was not able to access the Sidewalk because there was no ramp and because his path of travel was obstructed by the wheel barriers.

243.     As a result, in July 2024 Plaintiff was not able to enter Domino's.

244.     In July 2024, due to the aforementioned architectural barriers to entry to Domino's, Plaintiff was not able to maneuver his motorized scooter close enough to its entrance to request assistance of Domino's employees.

245.     In July 2024, there was no buzzer on Domino's wall, which Plaintiff may have used to call assistance of Domino's employees.

246.     In July 2024, there was no device on Domino's wall, which Plaintiff may have used to call assistance of Domino's employees.

247.     In July 2024, there was no buzzer in the Parking Lot, which Plaintiff may have used to call assistance of Domino's employees.

248.     In July 2024, there was no device in the Parking Lot, which Plaintiff may have used to call assistance of Domino's employees.

249.     Frustrated, disappointed, and humiliated, Plaintiff left the Parking Lot.

250.     The Parking Lot was designed by Defendants, who did not have Plaintiff and his needs in mind to accommodate him and facilitate his access to Domino's.

251.     The Parking Lot was designed by Defendants, who did not have Plaintiff and his needs in mind, to accommodate him and facilitate his access to the Parking Lot.

252.     The Parking Lot was designed by Defendants, who did not have Plaintiff and his needs in mind, to accommodate him and facilitate his access to the Subject Facility.

253.     Defendants discriminated against Plaintiff by denying him a safe, accessible, and navigable path of travel to Domino's from the Parking Lot.

254.     The Parking Lot was designed by Defendants, who disregarded the accessibility requirements of the ADA and failed to both accommodate Plaintiff and facilitate his access to Domino's.

**Plaintiff Intends to Return to Domino's**

255.        Domino's is in the Allerton section of the Bronx.

256.        Domino's is 12 miles from Plaintiff's home on the Upper West side in Manhattan.

257.        Plaintiff lives less than 30 minutes away from Domino's by an accessible van.

258.        Plaintiff visits Allerton approximately once every three months to dine and shop in that area.

259.        Plaintiff visits the Bronx at least once every month.

260.        Plaintiff visits his friends in the Bronx approximately once every three months.

261.        Plaintiff intends to visit and dine in Domino's in the future as soon as the architectural barriers are removed.

262.        Plaintiff intends to visit Domino's again in the future when he visits Allerton, dine in it and enjoy its services as soon as the architectural barriers are removed.

**Plaintiff is a Tester**

263.        Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting his civil rights.

264.        Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

265.        Completely independent of the personal desire to have access to Domino's free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

266.        As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

267.    Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

268.    When Plaintiff determines that barriers to access are unlawful, he initiates a legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

269.    Following completion of a legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

270.    As a tester, Plaintiff visited Domino's to encounter architectural barriers to access.

271.    As a tester, Plaintiff personally encountered the architectural barriers in the Parking Lot.

272.    Plaintiff visited Domino's and encountered ADA violations in its Parking Lot.

273.    Plaintiff encountered ADA violations during his visit to Domino's.

274.    Following conclusion of this lawsuit, Plaintiff intends to return to Domino's as both a customer, who wants to dine in Domino's, and as a tester to determine whether Defendants remediated the ADA violations.

275.    Plaintiff's motivation to return to Domino's in part stems from his desire to utilize ADA litigation to make his community more accessible for Plaintiff and other disabled individuals, who cannot visit Domino's because of the architectural barriers in its Parking Lot.

276.    Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to Domino's as soon as it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the ADA violations in the Parking Lot.

277.     Following conclusion of this lawsuit, Plaintiff intends to visit Domino's at least twice a year to ensure that Defendants comply with the ADA and to dine in it.

278.     Plaintiff is confident that Defendants will not remediate the ADA violations in the Parking Lot without the Court's intervention.

279.     Plaintiff will continue to suffer discrimination without the Court's intervention.

280.     Plaintiff will enforce the injunction once it is issued by the Court.


**Violations of Title III in the Subject Facility**

281.     Plaintiff has difficulties gaining access to Domino's, because of the unlawful architectural barriers, and therefore has suffered an injury in fact.

282.     Defendants failed to make the path of travel from the Parking Lot to Domino's readily accessible to the maximum extent feasible for individuals with disabilities.

283.     Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

284.     Defendants failed to remediate the architectural barriers to enter Domino's that violate 1991 ADA Standards when it was readily achievable to do so.

285.     Defendants failed to remediate architectural barriers to enter Domino's that violate 2010 ADA Standards when it was readily achievable to do so.

286.     Since January 26, 1992, Defendants failed to make Domino's readily accessible to the maximum extent feasible for individuals with disabilities.

287.     Since January 26, 1992, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

288.     Since January 26, 1992, Defendants failed to make the Parking Lot accessible for individuals with disabilities when it was readily achievable.

289.     Since January 26, 1992, Defendants failed to make Domino's accessible for individuals with disabilities when it was readily achievable.

290.     Since January 26, 1992, Defendants have engaged in unlawful practices in violation of the ADA.

291.     Since January 26, 1992, Defendants have engaged in unlawful practices in violation of the New York State Civil laws.

292.     Since January 26, 1992, Defendants have engaged in unlawful practices in violation of the New York State Human Rights laws.

293.     Since January 26, 1992, Defendants have engaged in unlawful practices in violation of the New York City Human Rights laws.

294.     Since March 15, 2012, Defendants failed to make Domino's readily accessible to the maximum extent feasible for individuals with disabilities.

295.     Since March 15, 2012, Defendants failed to make the Parking Lot readily accessible to the maximum extent feasible for individuals with disabilities.

296.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the 2010 ADA Standards.

297.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Civil laws.

298.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York State Human Rights laws.

299.     Since March 15, 2012, Defendants have engaged in unlawful practices in violation of the New York City Human Rights laws.

300.     Defendants continue to engage in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State, and New York City Human Rights laws.

301.     Due to the architectural barriers in the Parking Lot Plaintiff has difficulties visiting Domino's and is being discriminated against in violation of the ADA, the New York State Civil Rights laws, and the New York State, and New York City Human Rights laws.

302.     The architectural barriers to access Domino's have made it difficult for Plaintiff to visit it and have caused him embarrassment, humiliation, and frustration.

303.     Because Domino's is a place of public accommodation, Defendants are responsible for complying with the ADA, 28 C.F.R. §36.304.

304.     Because Domino's' Parking Lot is a public accommodation, Defendants are responsible for complying with ADA, 28 C.F.R. §36.304.

305.     Because the Subject Facility is a public accommodation, Defendants are responsible for complying with ADA, 28 C.F.R. §36.304.

306.     The architectural barriers to access to Domino's have greatly inconvenienced Plaintiff.

307.     Domino's violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

308.     In 1991, ADA Standards for Accessible Design Title III Regulation 28 CFR Part 36 was published ("1991 Standards").

309.     The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

310.     Defendants are discriminating against Plaintiff, because at Domino's they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to those listed below.

311.     The Parking Lot serves several businesses, including Domino's.

312.     In this Complaint, all references to the accessible parking spaces and access aisle refer to the two accessible parking spaces and one access aisle in the Parking Lot, located approximately in the middle of the building, in which Domino's is located.

313.     All references to "left" and "right" are from the point of view of a person driving into a parking space in the Parking Lot.

314.     "**Signage.** Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (see 4.30.7). Spaces complying with 4.1.2(5)(b) shall

have an additional sign "Van-Accessible" mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards §4.6.4*

315.    "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

316.    There is no identification sign identifying Left Accessible Parking Space in the Parking Lot in violation of 1991 Standards §4.6.4*.

317.    There is no identification sign identifying Left Accessible Parking Space in the Parking Lot in violation of 2010 Standards §502.6.

318.    There is no identification sign identifying Right Accessible Parking Space in the Parking Lot in violation of 1991 Standards §4.6.4*.

319.    There is no identification sign identifying Right Accessible Parking Space in the Parking Lot in violation of 2010 Standards §502.6.

320.    There is no sign containing the designation "Van-Accessible" in the Parking Lot in violation of 1991 Standards §4.6.4*.

321.    There is no sign containing the designation "van accessible" in the Parking Lot in violation of 2010 Standards §502.6.

322.    "**Parking Spaces.** Accessible parking spaces shall be at least 96 in (2440 mm) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3. Two accessible parking spaces may share a common

access aisle. Parked vehicle overhangs shall not reduce the clear width of an accessible route. Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

323.     "**Dimensions of Parking Spaces.** The access aisle shall be a minimum of 60 inches (1525 mm) wide for cars except a minimum of 96 inches (2440 mm) wide for van-accessible parking spaces. The width of the parking space shall be a minimum of 96 inches (2440 mm). The accessible route connected to the access aisle shall be a minimum of 36 inches (915 mm) wide." 1991 Standards §4.6.3

324.     "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3. **EXCEPTION:** Van parking spaces shall be permitted to be 96 inches (2440 mm) wide minimum where the access aisle is 96 inches (2440 mm) wide minimum." 2010 Standards §502.2.

325.     The Left Accessible Parking Space is 96 inches wide.

326.     The Access Aisle is 60 inches wide.

327.     The Right Accessible Parking Space is 96 inches wide.

328.     The Access Aisle is 60 inches wide, less than 96 inches required for an accessible van parking space in violation of 1991 Standards §4.6.3*.

329.     The Access Aisle is 60 inches wide, less than 96 inches required for an accessible van parking space in violation of 2010 Standards §502.2.

330.     Because each of the two accessible parking spaces in the Parking Lot is less than 132 inches wide, and each is 96 inches wide, and because the Access Aisle between them

is only 60 inches wide, no accessible parking space in the Parking Lot is compliant with §502.2 of 2010 Standards to satisfy the minimum requirements for an accessible van parking space.

331.     No accessible parking space in the Parking Lot is compliant with §4.6.3* of 1991 Standards to satisfy the minimum requirements for an accessible van parking space.

332.     There is no van-accessible space in the Parking Lot in violation of 1991 Standards §4.6.3*.

333.     There is no van-accessible space in the Parking Lot in violation of 2010 Standards §502.2.

334.     "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

335.     "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

336.     "Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 Standards §4.6.3*

337.     Maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

338.     Defendants grossly violated §4.6.3* of 1991 Standards.

339.     Defendants grossly violated 2010 Standards §Advisory 502.4.

340.     Defendants grossly violated §502.4 of 2010 Standards.

341.     The Left Accessible Parking Space has a running slope of 7.2%, which is equivalent to 1:13.89, in violation of 1991 Standards §4.6.3*.

342.     The Left Accessible Parking Space has a running slope of 7.2%, which is equivalent to 1:13.89, in violation of 2010 Standards §502.4.

343.     The Access Aisle has a running slope of 8.7%, which is equivalent to 1:11.49, in violation of 1991 Standards §4.6.3*.

344.     The Access Aisle has a running slope of 8.7%, which is equivalent to 1:11.49, in violation of 2010 Standards §502.4.

345.     The Right Accessible Parking Space has a running slope of 7.9%, which is equivalent to 1:12.66, in violation of 1991 Standards §4.6.3*.

346.     The Right Accessible Parking Space has a running slope of 7.9%, which is equivalent to 1:12.66, in violation of 2010 Standards §502.4.

347.     "**Ground and Floor Surfaces. Changes in Level.** Changes in level greater than 1/2 in (13 mm) shall be accomplished by means of a ramp that complies with 4.7 or 4.8." 1991 Standards §4.5.2.

348.     "**Curb Ramps. Location.** Curb ramps complying with 4.7 shall be provided wherever an accessible route crosses a curb." 1991 Standards §4.7.1.

349.     "**Ramps.** Changes in level greater than ½ inch (13 mm) high shall be *ramped* and shall comply with 405 or 406." 2010 Standards §303.4.

350.     There is a Sidewalk in front of the only entrance to Domino's.

351.     The only way to enter Domino's is by stepping onto the Sidewalk from the Parking Lot.

352.     The Sidewalk is at least four inches above the Parking Lot.

353.     There is a curb that is at least four inches high in front of the Sidewalk. That change in level is not accomplished by means of a ramp in violation of 1991 Standards §4.5.2.

354.     There is a curb that is at least four inches high in front of the Sidewalk. That change in level is not ramped in violation of 2010 Standards §303.4.

355.     There is no ramp leading from the Parking Lot to the Sidewalk in violation of 1991 Standards §4.7.1.

356.     There is no ramp leading from the Parking Lot to the Sidewalk in violation of 2010 Standards §303.4.

357.     Plaintiff intends to visit Domino's again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, meticulously detailed in this Complaint, are removed. The purpose of that return visit would be to be an ordinary customer, who comes to enjoy goods and services offered at Domino's, as well as to determine whether, and when, Domino's has been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy Domino's in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

358.     Plaintiff intends to visit Domino's again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject himself to Defendants' unequal treatment and

blatant discrimination of him through their architectural barriers to equal access and engage in the futile gesture of attempting to patronize Domino's, a business place of public accommodation, known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at Domino's.

359.    Plaintiff has traveled to Domino's as a customer, as well as an independent advocate for the disabled, encountered and/or observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at Domino's until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make Domino's equally accessible to all.

360.    Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of Domino's to measure and photograph architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

361.    The discriminatory violations described above are not an exhaustive list of Defendants' violations of the ADA and barriers to equal access to Domino's, because Plaintiff was unable to access and assess all areas of Domino's due to the architectural barriers encountered. A complete list of Domino's ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures necessary to

remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

362.     Defendants have failed to maintain the accessible elements at Domino's. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

363.     Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at Domino's in violation of 28 CFR §36.202 and §36.211.

364.     The architectural barriers, described above, have a discriminative effect on Plaintiff, as a wheelchair user, making him unable to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of Domino's as Defendants' able-bodied customers.

365.     Defendants have failed to remove architectural barriers to accessibility to Domino's in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

366.     Since March 15, 2012, Defendants have altered the Parking Lot.

367.     **New construction and alterations. (a) Design and construction.** "(1) Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

368.     **"(2) Exception for structural impracticability.** (i) Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements. Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features. (ii) If full compliance with this section would be structurally impracticable, compliance with this section is required to the extent that it is not structurally impracticable. In that case, any portion of the facility that can be made accessible shall be made accessible to the extent that it is not structurally impracticable." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

369.     **"(b) Alterations.** (1) Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.

370.     The Parking Lot was altered after March 15, 2012.

371.     Defendants failed to make Domino's readily accessible to disabled people, including those who use wheelchairs.

372.     The foregoing violations are violations of the 1991 ADAAG, and the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

373.      The removal of the physical barriers, dangerous conditions, and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. §12181(9); 28 C.F.R. §36.304.

374.      It is readily achievable to remediate every one of the violations described above as the costs do not exceed the benefits.

375.      Removal of the physical barriers and dangerous conditions present at Domino's is readily achievable because of the site conditions, the structural design of the store and the straightforward nature of the necessary modifications.

376.      To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

377.      Removal of the architectural barriers and dangerous conditions at Domino's is readily achievable because of the relative low cost of the necessary modifications.

378.      Defendants have financial resources to make the modifications, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

379.      The Parking Lot was not constructed to be readily accessible for individuals with disabilities and was in violation of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

380.     It was structurally practicable for Defendants to meet the requirements of 1991 ADA Standards. (Section 35.151 of 28 CFR Part 35, §35.151 New construction and alterations.)

381.     The Parking Lot was not constructed to be readily accessible and was in violation of 2010 ADA Standards.

382.     It was structurally practicable for Defendants to meet the requirements of 2010 ADA Standards.

383.     The Parking Lot was not in compliance with the accessibility standards of Title III of 1991.

384.     The Parking Lot failed to comply with the accessibility standards of Title III of 1991.

385.     After the Parking Lot was altered, it did not comply with the accessibility standards of Title III of 1991.

386.     The Parking Lot was not maintained in a manner compliant with the accessibility standards of Title III of 1991.

387.     The Parking Lot was designed in a manner that did not comply with 2010 ADA Standards.

388.     The Parking Lot was constructed in a manner that did not comply with 2010 ADA Standards.

389.     After the Parking Lot was altered, it did not comply with 2010 ADA Standards.

390.     The Parking Lot was maintained in a manner that did not comply with 2010 ADA Standards.

391.    By continuing to maintain and/or operate the Parking Lot in a manner that does not comply with the ADA, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive him of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

392.    Defendants are required to remove existing architectural barriers to the disabled when such removal is readily achievable for places of public accommodation that have existed prior to January 26, 1992. 28 CFR 36.304(a).

393.    As there has been an alteration to Defendants' place of public accommodation since January 26, 1992, they are required to ensure to the maximum extent feasible that the altered portions of the Parking Lot are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs. 28 CFR 36.402.

394.    The Parking Lot was constructed after January 26, 1992, and must be readily accessible to individuals with disabilities in compliance with the ADA.

395.    To date, Defendants have failed to comply with the above mandates.

396.    Defendants made alteration to the Parking Lot and failed to make it "readily accessible to and usable by individuals with disabilities," even though alteration to it was commenced after January 26, 1992, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

397.    Defendants made alteration to the Parking Lot and failed to make it "readily accessible to and usable by individuals with disabilities," even though alteration to it was commenced after March 15, 2012, in violation of 35.151 of 28 CFR Part 35, §35.151(b).

398.    Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

399.    Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by the public accommodation under their control, thus discriminating against him.

400.    Plaintiff's requested relief serves public interest.

401.    To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist in the Parking Lot and have not been remediated, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

402.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make Domino's readily accessible to persons with disabilities.

403.    Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make the Parking Lot readily accessible to persons with disabilities.

404.    Defendants should have removed the architectural barriers by January 26, 1992. To date, they have failed to comply with that mandate.

405.    Defendants' failure to remove barriers to access a place of public accommodation constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

406.    It was not structurally impracticable for Defendants to make the Parking Lot accessible.

407.    Removal of all architectural barriers existing at the Parking Lot was, and is, readily achievable by Defendants.

408.    Accommodations to Plaintiff and removal of the architectural barriers at the Parking Lot by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

409.    Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

410.    Defendants' failure to make the Parking Lot accessible has denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations because of his disability.

411.    The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of Domino's and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

412.    The Parking Lot is not accessible to, or readily usable by, individuals with disabilities.

413.    Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Parking Lot, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close Domino's until the required modifications are completed.

414.    Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of Domino's is legally inexcusable.

415.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

416.     The inexcusability of Defendants' actions is exacerbated by the fact that over 30 years have passed since the effective date of Title III of the ADA. During that time, they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but did not do so.

417.     By not removing the architectural barriers, which barred Plaintiff's access, inconvenienced, embarrassed, and humiliated him, Defendants gave a crystal-clear message to Plaintiff that his patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

418.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

419.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or

deny to such person any of the accommodations, advantages,

facilities or privileges thereof … to the effect that any of the

accommodations, advantages, facilities and privileges of any

such place shall be refused, withheld from or denied to any

person on account of … disability … .

NYS Executive Law §296(2)(a)

420.    The Subject Facility is a place of public accommodation, as defined in New York

State Human Rights Law §292(9).

421.    Defendants have further violated the New York State Human Rights Law by being

in violation of the rights provided under the ADA.

422.    Defendants are in violation of the New York State Human Rights Law by denying

Plaintiff full and safe access to the benefits, accommodations, and services of the Subject

Facility.

423.    Defendants do not provide Plaintiff with equal opportunity to use their public

accommodation.

424.    Defendants have failed to make all readily achievable accommodations and

modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

425.    Defendants have not provided Plaintiff with evenhanded treatment in violation of

New York State Human Rights Law §296.

426.    Defendants' unequal treatment of Plaintiff was demonstrated when he was

discriminated against.

427.      Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodations.

428.      Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, undesirable, unacceptable, and objectionable.

429.      In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

430.      Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

431.      Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

432.      Defendants have violated Plaintiff's civil rights because of his disability.

433.      Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

434.      Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

435.      A copy of this Complaint is being served upon the attorney general by the United States mail, first class mail, postage prepaid.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

436.    Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth

in this complaint, as if fully set forth herein.

437.    The New York City Human Rights Law, in relevant part, provides the below.

It shall be an unlawful discriminatory practice for any person

who is the owner, franchisor, franchisee, lessor, lessee,

proprietor, manager, superintendent, agent or employee of

any place or provider of public accommodation:

1. Because of any person's actual or perceived …

disability …, directly or indirectly:

(a) to refuse, withhold from or deny to such

person the full and equal enjoyment, on equal

terms and conditions, of any of the

accommodations, advantages, services,

facilities or privileges of the place or provider

of public accommodation;

NYC Admin. Code §8-107(4)

438.    Defendants have not reasonably accommodated Plaintiff in violation of New York

City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

439.    In violation of the New York City Administrative Code, Defendants have

unlawfully discriminated against Plaintiff.

440.    Reasonable accommodations and modifications are necessary to enable Plaintiff to enjoy non-restricted access and use of Defendants' Subject Facility.

441.    In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facility have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

442.    In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, objectionable and not acceptable.

443.    Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

444.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

445.    A copy of this Complaint is being served upon the New York City Commission on Human Rights by United States mail, first class mail, postage prepaid.

446.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

447.    Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.
>
> NYC Admin. Code §8-502(g)

## **COMPENSATORY AND STATUTORY MONETARY DAMAGES**

448.        Plaintiff demands compensatory damages in the amount of $1,000 from Defendants

under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York

City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL
> and the NYCHRL, a Court in the Southern District of New
> York just a few months ago found relevant the fact that '[t]he
> New York City Human Rights Commission has deemed
> awards of $1,000 to be sufficient in cases where
> complainants did not establish any particular damage 'other
> than what a decent and reasonable individual would suffer
> when faced with such ignorant behavior.'

> Shalto v. Bay of Bengal Kabob Corp., 2013 WL
> 867429, (quoting and adapting Kreisler, 2012 WL
> 3961304, at *14)

449.        Plaintiff requests statutory monetary damages in the sum of $500 from Defendants

to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person*
> [emphasis added] who shall violate any of the provisions of
> New York Civil Rights Law §40-d 'shall for each and every
> violation thereof be liable to a penalty of not less than one
> hundred dollars nor more than five hundred dollars, to be

> recovered by the person aggrieved thereby in any Court of
> competent jurisdiction in the county in which the defendant
> shall reside. …   [T]his Court has the authority to order
> Defendant to pay Plaintiff the $500 in statutory damages
> contemplated by the New York Civil Rights Law for the
> disability discrimination Plaintiff has suffered….

<u>Shalto v. Bay of Bengal Kabob Corp.</u>, 2013 WL 867429

450.    The reason Plaintiff requests $500 from Defendants, and not a lower amount
envisioned by the statutes, is due to the high number and extent of the violations, which
were alleged in detail in this Complaint. Furthermore, the number of violations may be
even greater, and they may be even more extensive, than those alleged here, and it is likely
that they will be revealed upon inspection of the Subject Facility by an expert.

## **INJUNCTIVE RELIEF**

451.    Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant
Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily
accessible to, and useable by, individuals with disabilities to the extent required by the
ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the
New York City Human Rights Law, and close the Subject Facility until requisite
modifications are completed.

452.    Plaintiff requests the Court to issue a permanent injunction enjoining Defendants
from disability discrimination.

453.     Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adopt relief ordered in <u>Shariff v. Alsaydi</u>, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this Complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

454.     Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

## DECLARATORY RELIEF

455.     Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facility by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.    Grant a permanent injunction

    i.)    Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

    ii.)    Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

    iii.)    Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

    iv.)    Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

    v.)    Ordering Defendants to make the Subject Facility readily accessible to and usable by Plaintiff and other individuals with disabilities.

    vi.)    Ordering the issuance of an injunction that requires Defendants

        i.    to prepare architectural plans remedying the ADA violations described in the Complaint, and

       ii.  to provide Plaintiff's counsel with those plans for review within 60 days of the Court's Order.

vii.)     Ordering that the injunction affords Plaintiff 30 days to file a motion seeking relief on the basis that Defendants' proposed architectural plans are inadequate to remedy the ADA violations specified in the Complaint; and

viii.)     Ordering that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement or a ruling by the Court that the plans are adequate.

B.    Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.    Enter declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.    Enter an order requiring Defendants to alter their Subject Facility and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.    Hold Defendants liable for $500 in statutory monetary damages for their violations and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.      Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.      Retain its jurisdiction over Defendants until their unlawful practices, acts, and omissions no longer exist;

H.      Find that Plaintiff is a prevailing party in this litigation.

I.      Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.      Award such other and further relief as it deems necessary, just, and proper.

## **JURY DEMANDED**

Plaintiff demands a trial by jury of all the issues of fact and damages.

July 21, 2024

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that on July 21, 2024, I filed the foregoing Complaint with the Court via CM/ECF, which caused notice to be served upon all e-filing attorneys of record. In addition, I also mailed copies of the foregoing Complaint by the United States mail, first class mail, postage prepaid, to the Civil Rights Bureau and the New York City Commission on Human Rights at the following addresses: Civil Rights Bureau, 28 Liberty Street, New York, NY 10005; and Damion K. L. Stodola, General Counsel, NYC Commission on Human Rights, 22 Reade Street, 2nd Floor, New York, NY 10007.

July 21, 2024

Respectfully submitted,

s:/Daniel Berke
Daniel Berke (db1855)

Daniel Berke (db1855)
Berke & Associates PLLC
203 East 72nd Street, Suite 6A
New York, NY 10021
Tel: (917) 747-4263
Email: danberke100@gmail.com
*Attorney for Plaintiff*